UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HORACE LEE,
DESHON TAYLOR, and all
other similarly situated,                          Case No. 12-cv-14104

                              Plaintiffs,          Honorable Gershwin A. Drain

v

GAB TELECOM, INC.,

                              Defendant.

                                                                                    /

NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C.
By:     David M. Blanchard (P67190)
        Edward A. Macey (P72939)
Attorneys for Lead Plaintiffs Horace Lee, Deshon Taylor,
Dexter Johnson, Terris Walker and Opt-In Plaintiffs Dale L. Wells,
Reggie Harris, Charles Reed, Kenneth M. Davis, Darius Dawson,
Thomas C. Williams, II, James Wilkerson and Ricky Edward Newsted
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550

LICHTEN & LISS-RIORDAN, P.C.
By:     Harold Lichten
Attorneys for Lead Plaintiffs Horace Lee, Deshon Taylor,
Dexter Johnson, Terris Walker and Opt-In Plaintiffs Dale L. Wells,
Reggie Harris, Charles Reed, Kenneth M. Davis, Darius Dawson,
Thomas C. Williams, II, James Wilkerson and Ricky Edward Newsted
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

LAMBERT LESER
By:     John E. Gannon (P41349)
Attorneys for Defendant
916 Washington Avenue, Ste. 309
Bay City, Michigan 48708
(989) 893-3518

                                                                                    /

<u>DEFENDANT'S COUNTER-MOTION: (1) TO PROHIBIT OPT-INS FROM JOINING CASE;
(2) FOR REMOVAL OF INTERNET OR OTHER POSTINGS BY COUNSEL FOR
PLAINTIFFS DURING NOTICE PERIOD AND ACCOUNTING REGARDING
SOLICITATION OF OPT-INS; (3) TO COMPEL RESPONSES TO DISCOVERY BY LEAD
PLAINTIFFS AND OPT-INS (IF PERMITTED TO PARTICIPATE IN THE LITIGATION)
AND EXTEND DISCOVERY DEADLINE FOR DEFENDANT ONLY; AND (4) TO QUASH
AND LIMIT DISCOVERY REQUEST BY OPT-INS (IF COURT ALLOWS OPT-IN
PARTICIPATION AND LIMITS SCOPE OF DISCOVERY);</u>

For the reasons set forth in the brief filed in opposition to the Plaintiffs' Motion For

Plaintiffs' Motion For Supplemental Class Notice And For Sanctions, the Defendant request that

the Court grant its Counter-Motion: (1) To Prohibit Opt-Ins From Joining Case; (2) For Removal

Of Internet Or Other Postings By Counsel For Plaintiffs During Notice Period And Accounting

Regarding Solicitation Of Opt-Ins; (3) To Compel Responses To Discovery By Lead Plaintiffs

And Opt-Ins (If Permitted To Participate In The Litigation) And Extend Discovery Deadline For

Defendant Only; And (4) To Quash And Limit Discovery Request By Opt-Ins (If Court Allows

Opt-In Participation And Limits Scope Of Discovery). Defense counsel requested concurrence

with the relief requested in this motion by email dated June 25, 2013 and counsel for the

Plaintiffs have refused to acknowledge the request or respond.

Dated: June 27, 2013.                          LAMBERT LESER

                                              By:    /s/ John E. Gannon
                                              John E. Gannon (P41349)
                                              Attorneys for Defendant
                                              916 Washington Avenue, Ste. 309
                                              Bay City, Michigan 48708
                                              (989) 893-3518
                                              jgannon@lambertleser.com

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing documents have been properly forwarded to all counsel of record per the FEDERAL RULES OF CIVIL PROCEDURE, on this 27th day of June, 2013.


    / s / *John E. Gannon*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HORACE LEE,
DESHON TAYLOR, and all
other similarly situated,

                        Plaintiffs,

v

GAB TELECOM, INC.,

                        Defendant.

                                                Case No. 12-cv-14104

                                                Honorable Gershwin A. Drain

/

NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C.
By:    David M. Blanchard (P67190)
        Edward A. Macey (P72939)
Attorneys for Lead Plaintiffs Horace Lee, Deshon Taylor,
Dexter Johnson, Terris Walker and Opt-In Plaintiffs Dale L. Wells,
Reggie Harris, Charles Reed, Kenneth M. Davis, Darius Dawson,
Thomas C. Williams, II, James Wilkerson and Ricky Edward Newsted
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550

LICHTEN & LISS-RIORDAN, P.C.
By:    Harold Lichten
Attorneys for Lead Plaintiffs Horace Lee, Deshon Taylor,
Dexter Johnson, Terris Walker and Opt-In Plaintiffs Dale L. Wells,
Reggie Harris, Charles Reed, Kenneth M. Davis, Darius Dawson,
Thomas C. Williams, II, James Wilkerson and Ricky Edward Newsted
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

LAMBERT LESER
By:    John E. Gannon (P41349)
Attorneys for Defendant
916 Washington Avenue, Ste. 309
Bay City, Michigan 48708
(989) 893-3518

/

{00189469}

DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR SUPPLEMENTAL CLASS NOTICE AND FOR SANCTIONS AND IN SUPPORT OF COUNTER MOTION: (1) TO PROHIBIT OPT-INS FROM JOINING CASE; (2) FOR REMOVAL OF INTERNET OR OTHER POSTINGS BY COUNSEL FOR PLAINTIFFS DURING NOTICE PERIOD AND ACCOUNTING REGARDING SOLICITATION OF OPT-INS; (3) TO COMPEL RESPONSES TO DISCOVERY BY LEAD PLAINTIFFS AND OPT-INS (IF PERMITTED TO PARTICIPATE IN THE LITIGATION) AND EXTEND DISCOVERY DEADLINE FOR DEFENDANT ONLY; AND (4) TO QUASH AND LIMIT DISCOVERY REQUEST BY OPT-INS (IF COURT ALLOWS OPT-IN PARTICIPATION AND LIMITS SCOPE OF DISCOVERY);

<u>Statement of Issues Presented</u>

1.      Should the Court grant the Plaintiff's motion for supplemental class notice and sanctions?

   The Plaintiffs contend the answer should be yes.
   The Defendant contends the answer should be no.

2.      Should the Court grant the Defendant's counter-motion to: 1) to prohibit further opt-ins from joining case; (2) for removal of internet or other postings by counsel for plaintiffs during notice period and accounting regarding solicitation of opt-ins; (3) to compel responses to discovery by lead plaintiffs and opt-ins  (if permitted to participate in the litigation) and extend discovery deadline for defendant only; and (4) to quash and limit discovery request by opt-ins (if Court allows opt-in participation and limits scope of discovery).

   The Defendant contends the answer should be yes.
   The Plaintiff contends the answer should be no.

## Controlling or Most Appropriate Authorization for Relief Sought

Cases:

*Robert Swinney, et al v Amcomm Telecommunications, Inc.*, 12-cv-12925-NGE-MAR       12
*Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252       12
*O'Brien*, 575 F.3d at 583       12
*Comer*, 454 F.3d at 546       12
*Principles of Aggregate Law: Aggregate Litigation § 2.07*       12
*Dunlop v Carriage Carpet, Co.*, 548 (f)(2)(d) 139       13
*Imars v Contractors MFG Servs, Inc.*, 165 (f)(3)(d) 27       13
*Myers v Copper Cellar Corp*, 192 F3d 546, 551       14

Court Rules and Statues:

29 U.S.C. § 216(b)       13

I.      Factual Background.

This lawsuit involves claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq ("FLSA"), by cable installers who allege they were misclassified as independent contractors, rather than employees, and, therefore, entitled to unpaid overtime. (See Dkt. 1).

On December 14, 2012, the lead Plaintiffs filed a motion seeking conditional class certification and judicial notice of a collective action as allowed under § 216(b) of the FLSA. (See Dkt. 15).

On January 30, 2013, the lead Plaintiffs filed their initial disclosures.  The disclosures were evasive and generic and, with respect to damages, gave no explanation or computation as required by FRCP 26(a)(1)(A)(iii).  Rather, the disclosure indicated that "[p]laintiffs at this time cannot submit a computation of damages at this time." (See Exhibit "A").

On March 13, 2013, the Defendant sent requests for admission, interrogatories and a request for production to the lead Plaintiffs seeking, among other things, the factual basis for their claims (including how the claims were similarly situated to potential opt-ins) and a computation of their damages.  The answers were, again, evasive and generic. (See Exhibit "B"). The lead Plaintiffs, among other things, failed to:

> 1.      Identify or produce information regarding experts they intend to call at trial--nothing was produced. (See Exhibit "B," paragraph 2);
>
> 2.      Identify and produce trial exhibits known to date--nothing was produced. (See Exhibit "B," paragraph 3);
>
> 3.      Identify specific witnesses and identify and produce specific factual support for their claim that they were employees of the Defendant and that the Defendant was in complete control of the manner in which they performed services, as alleged in paragraph 13 of the complaint. (See Exhibit "B," paragraph 4).  This information is

relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

4.      Identify specific witnesses and identify and produce specific factual support for their claim that they were entirely dependent on the Defendant for their business, were only able to install telecommunication services for the Defendant and would be fired if they solicited additional work, as alleged in paragraph 14 of the complaint. (See Exhibit "B," paragraph 5).   This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

5.      Identify specific witnesses and identify and produce specific factual support for their claim that customers paid WOW directly for all services performed and that the Plaintiffs could not negotiate for services provided or payment, as alleged in paragraph 19 of the complaint.  (See Exhibit "B," paragraph 7). This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

6.      Identify specific witnesses and identify and produce specific factual support for their claim that they only installed equipment provided by the Defendant, wore uniforms with the WOW logo and drove vehicles with the WOW logo affixed, as alleged in paragraph 20 of the complaint. (See Exhibit "B," paragraph 8).  This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

7.      Identify specific witnesses and identify and produce specific factual support for their claim that their personal vehicles needed to be white or repainted white and needed ladders installed and WOW logos affixed upon item and that the Plaintiffs were charged for WOW logos/decals, as alleged in paragraph 21 of the complaint. (See Exhibit "B," paragraph 9).  This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

8.      Identify specific witnesses and identify and produce specific factual support for their claim that the Defendant  and/or  its supervisors  terminated   "independent contractors" when they were not pleased with the manner in which services were performed and/or move them to perform work orders for other cable companies that use the Defendant's services, as alleged in paragraphs 22 and 23 of the complaint.  (See Exhibit "B," paragraph 10).  This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

9.    Identify specific witnesses and identify and produce specific factual support for their claim that they regularly worked more than 40 hours a week while performing services for the Defendant, but were not paid time and one-half for hours worked greater than 40 hours in a week, as alleged in paragraph 24 of the complaint. (See Exhibit "B," paragraph 11). This information is relevant because it has direct bearing on the lead Plaintiffs' damage claims;

10.    Identify specific witnesses and identify and produce specific factual support for their claim that they were responsible for various expenses that should have been paid by the Defendant as a cost of doing business, as alleged in paragraph 25 of the complaint. (See Exhibit "B," paragraph 12). This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

11.    Identify specific witnesses and identify and produce specific factual support for their claim that the Defendant charges up the full value of the services provided by the Plaintiffs for minor errors, as alleged in paragraph 29 of the complaint. (See Exhibit "B," paragraph 13). This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

12.    Identify specific witnesses and identify and produce specific factual support for their claims that they were back charged the full amount of an installation job for minor errors, violation of company policy and damage to customer property and unable to contest back charges and charged administrative fees, as alleged in paragraphs 30-35 of the complaint. (See Exhibit "B," paragraph 14). This information is relevant since it seeks evidentiary support for claims that were pled by the lead Plaintiffs;

13.    Identify specific witnesses and identify and produce specific factual support for their claims that the Defendant was not acting in good faith and in conformity with and reliance on the written administrative regulations, orders, rulings, approvals and/or interpretations of the Administrator of the Wage and Hour Division of the Department of Labor and any applicable administrative practices or enforcement policies of the Administrator in its classification of the Plaintiffs or other "individuals" referenced in the complaint. (See Exhibit "B," paragraph 17). This information is relevant since it relates to a valid defense under the FLSA (which the Defendant has pled) and has bearing on the issue of damages;

14.    Produce complete tax information for the time period in question. (See Exhibit "B," paragraph 18). This information is relevant, because, among other things, it would reveal if the lead

Plaintiffs were working for other businesses (i.e., businesses other than the Defendant) during the time period in question and has bearing on the overtime claim;

15.    Identify specific witnesses and identify and produce specific factual support for their damage claims, including how the damages were calculated. (See Exhibit "B," paragraph 19).    This information is certainly relevant.  The Defendant has the right to know the specific type(s) of damages claimed and how they were calculated;

16.    Identify specific witnesses and identify and produce specific factual support for their claim that they worked more than 40 hours in a work week for the Defendant, including documents and exhibits identifying each week during which the Plaintiffs claim they worked in excess of 40 hours and identifying the jobs worked, hours worked, pay they actually received and pay they claim they should have received.  (See Exhibit "B," paragraph 20).  This information is relevant because it has direct bearing on the issue of damages; and

17.    Business and financial records for any business they own, including payroll records, during the time-period in question.  (See Exhibit "B," paragraph 21).    Again, this information is relevant, because, among other things, it would reveal if the lead Plaintiffs were working for other businesses (i.e., businesses other than the Defendant) during the time period in question.

At times in answering the discovery requests, the lead Plaintiffs referred to the affidavits they filed in connection with their motion for conditional class certification as "factual support" for their claims.  However, the affidavits, and their answers to the discovery requests in general, contained no specifics.  For example, they allude to conversations that allegedly took place with customers, other cable installers and/or representatives of the Defendant, but fail to provide the actual the names of the individuals or state when the conversations allegedly occurred.  Likewise, any reference the lead Plaintiffs made to policies or procedures allegedly used by the Defendant were referred to generically and no copies were attached to the answers.  Many times the lead Plaintiffs stated they could personally attest to certain matters, but they failed to indicate how they obtained such personal knowledge. The documents attached to the answers to the

discovery requests were attached as a group "exhibit" and were not organized and labeled to correspond with the categories cited in the discovery request. These general and evasive responses leave the Defendant guessing as to the factual basis for the claims asserted in this litigation and, as discussed below, fall well short of meeting the Plaintiffs' burden for class certification and claims that they were not properly compensated.

On April 16, 2013, the Court granted conditional certification and approved a proposed notice and opt-in form to potential opt-ins (collectively attached as Exhibit "C"), expressly reserving the right to re-examine class certification under the "rigor of the second stage analysis" once the parties had "the opportunity to engage in further discovery." (See Dkt. 25, p.7). Pursuant to the terms of the approved notice, opt-ins had until July 9, 2013 to join the litigation. (See Exhibit "C").

On April 25, 2013 the Court issued a supplemental order (See Dkt. 26) directing the Defendant to provide "all mailing addresses for individuals performing cable installation services who were compensated as independent contractors by GAB Telecom, Inc. from September 14, 2009 to September 14 2012 (the date the complaint was filed) to Plaintiffs' counsel by Wednesday, May 8, 2013." The Defendant timely provided the information, as required.

On May 10, 2013, counsel for the lead Plaintiffs apparently sent out notices and opt-in forms to potential opt-ins, but failed to simultaneously provide defense counsel with copies. (See Exhibit "D").

In early May 30, 2013 and June 7, 2013, counsel for the lead Plaintiffs filed notices indicating that various individuals had opted into the case. (See Dkts. 30 and 31). The notices gave little information regarding the factual basis for the claims asserted by the opt-ins. In addition, the opt-ins failed to provide initial disclosures, as required by FRCP 26(a)(1)(E)--and

they have failed to provide such disclosures to date.  Therefore, defense counsel issued a discovery request to the opt-ins.  The discovery request to the opt-ins was identical to the request served on the lead Plaintiffs and sought, among other things, the factual basis for their claims (including how the claims were similarly situated to lead Plaintiffs) and information regarding their damage claims, including how the damages were computed.  Since counsel for the lead Plaintiffs had failed to confirm whether they were representing the opt-ins, the discovery requests were served upon counsel for the lead Plaintiffs and copied to the opt-ins.  (See Exhibit "E").

Counsel for the lead Plaintiffs then subsequently claimed that they represented the opt-ins (though they have failed to file an appearance to that effect to date) and that the dual service was improper contact with their clients.  Additionally, they advised that they had no intention of responding to the discovery requests issued to the opt-ins or presenting the opt-ins for depositions, as requested.  Rather, counsel for the lead Plaintiffs advised that they would permit discovery with respect to a representative "sample" of the opt-ins (See Exhibit "F").  This is contrary to the express provisions of the Court's scheduling order, which places no restrictions on discovery (Dkt. 21).

Discovery is presently scheduled to close on July 19, 2013 and facilitation of the case is to be completed by the end of August 2013.  Yet, none of the Plaintiffs have permitted or provided meaningful discovery to date.  The Plaintiffs, on the other-hand, recently issued supplemental discovery (See Exhibit "G") to the Defendant and expect compliance and a timely response.  To them, due process permits full discovery on their end, but only limited discovery by the Defendant--a disturbing proposition.

Even more disturbing, however, is the fact that, on April 25, 2013 (i.e, the day the Court directed the Defendant to provide the names and addresses of cable installers for purpose of approved opt-in notice and 15 days *before* the Court-approved notice was sent to opt-ins) counsel for the lead Plaintiffs, without approval from the Court or the knowledge and consent of defense counsel, created internet postings soliciting opt-ins to join the litigation. (See Exhibit "H"). The title of one posting inferred that counsel for the lead Plaintiffs had obtained a "*win*" in the litigation and "clearance of their right to notify *misclassified* cable installment workers of their right to join the lawsuit." (See Exhibit "H-1," Emphasis added). The posting gave links to the offices of counsel for the lead Plaintiffs, a link to the Court's order granting conditional class certification and a link to the complaint the lead Plaintiffs had filed in the litigation. (See Exhibit "H"). The posting also implied that the Court had taken a position on the merits of the case, stating in pertinent part:

> "In a recent order...the Federal District for the Eastern District of Michigan gave the green light for plaintiff's attorney David Blanchard and Harold Lichten...to notify potential claimants of the right to be represented in the unpaid overtime claims against cable installment company GAB."
>
> ...
>
> "The 'initial certification' of Judge Drain in the Eastern District of Michigan is just one line of hard-fought cases to establish the right of cable installers...to be paid for all hours worked and...overtime. This fundamental principle of labor law is routinely violated across Michigan and the country by companies that put profits ahead of wage and hour compliance in an effort to skirt the law for an extra dollar. The wage and hour lawyers at Nacht, Roumel, Salvatore, Blanchard & Walker, PC are continuously engaged in the fight to advise Michigan employees of their right to be represented and to be paid for all hours worked. For updates on the GAB...[case], or for information on how to join, contact plaintiff's attorney David Blanchard." (See Exhibit "H").

Another posting inferred that "GAB had *violated* the FLSA." (See Exhibit "H-2").

Contrary to the internet postings, the notice to opt-ins that was approved by the Court specifically states that the claims in the litigation are disputed and that, "while the court approved the sending of [the] notice, it expresses no opinion on the merit of the lawsuit...and has not determined that GAB has violated the FLSA." (See Exhibit "C").  In addition, and contrary to the internet postings, the notice approved by the Court advises potential opt-ins that they may contact either counsel for the lead Plaintiffs or counsel for the Defendant with any questions--it does not indicate that opt-ins may only direct questions regarding the litigation to counsel for the lead Plaintiffs.  (See Exhibit "C").

## II.  Analysis and Argument.

In connection with their motion, the lead Plaintiffs raise, essentially, two arguments.

First, the lead Plaintiffs argue that dual service of the discovery request to the opt-ins was improper contact and "unethical," warranting the imposition of sanctions against defense counsel and an extension of the notice period.  The argument, however, is without merit.  Counsel for the lead Plaintiffs did not take appropriate steps to advise defense counsel that they were representing the opt-ins.  The notice to opt-ins approved by the Court does not state that all opt-ins were automatically represented by counsel for the lead Plaintiffs if they joined the litigation.  Rather, the notice merely states that "[i]f you elect to opt-in to this lawsuit and be represented by the plaintiffs' lawyers...."  Such language certainly implies that one could opt-in and not elect to be represented by the plaintiffs' lawyers.  Nowhere does the notice indicate that all opt-ins will be automatically represented by counsel for the lead Plaintiffs and, if that was the case, counsel for the lead plaintiffs (who drafted the notice) could have simply stated that to avoid any confusion.

Additionally, when the opt-in forms were submitted, counsel for the lead Plaintiffs did not file an appearance indicating they were representing the opt-ins and the notice itself gave no disclosure of representation.   Rather, the notice merely stated that it had been submitted by counsel for the lead Plaintiffs, "and others similarly situated"--the same designation counsel for the lead Plaintiffs used at times *before* any opt-ins joined the litigation.   An appearance was certainly appropriate and required at this point (particularly if counsel for the lead plaintiffs represented the opt-ins) since Local Rule 83.25 requires an attorney to "appear before representing a person or party."

Finally, even when defense counsel inquired as to representation of the opt-ins, counsel for the lead Plaintiffs did not confirm.   Given the rapidly approaching discovery deadline and to avoid possible claims that the opt-in were not properly served, defense counsel utilized dual service.   If the dual service was truly an attempt to be "coercive" or "underhanded," as the lead Plaintiffs attempt to suggest, defense counsel certainly would not have advised counsel for the lead Plaintiffs (the very same day the discovery request went out) that they were using dual service due to the failure to confirm representation or, for that matter, used dual service in the first place.

The confusion regarding representation is underscored by the fact that counsel for the lead Plaintiffs executed the complaint as counsel for "ROBERT SWINNEY, LESLEY WARDELL and all others similarly situated." As the Court may recall, this is an entirely different FLSA case presently pending before Judge Edmunds and was discussed by the Defendants in its brief in opposition to conditional class certification.

Reliance on RI-322 by the lead Plaintiffs appears inappropriate.   The inquiry seeks direction as to whether a "lawyer can communicate in writing to opposing counsel's client

provided that the lawyer simultaneously sends a copy in writing to opposing counsel"... and "[o]pposing counsel has not consented to sending written communications to the client." The inquiry *assumes* there has been proper notice of representation. Here, however, as explained above, there was no proper notice, as required by local rule or otherwise.

There was no underhandedness or impropriety here. Rather, counsel for the lead Plaintiffs are merely attempting to find a reason to extend the opt-in deadline to a date beyond July 9, since there have been only 10 opt-ins to date. The dual service certainly did not cause the limited number of potential opt-ins to date, as argued by the lead Plaintiffs, since it occurred *after* the opt-ins had already joined the litigation. In addition, it was only sent to counsel for the lead Plaintiffs and the opt-ins--nobody else. In the end, the argument by counsel for the lead Plaintiffs lacks candor and full disclosure to the Court. On one hand, counsel for the lead Plaintiffs personally attack and question the conduct of defense counsel (for reasons that, as discussed above, are untrue) and, on the other-hand, fail to disclose their contemptuous conduct of soliciting potential opt-ins over the internet for a significant period of time without approval from the Court or the knowledge and consent of defense counsel. Their conduct has tainted what should otherwise be a neutral, court-approved notice period. Given the circumstances, no additional notice period is warranted.

Accordingly, Defendant requests that the Court deny the lead Plaintiffs' motion for supplemental notice to potential opt-ins and for sanctions. In addition, and for the reasons stated above, the Defendant requests that the Court grant its counter-motion and enter an order: (a) directing the current lead and opt-in Plaintiffs (and their counsel) to cease and provide an accounting of all solicitations made to potential opt-ins to date; (b) directing the current lead and opt-in Plaintiffs (and their counsel) to provide an accounting of all solicitations that were made

to current opt-ins; and (c) prohibiting opt-ins from participating in this litigation, given the improper solicitations.

Second, the lead Plaintiffs argue that the discovery request sent to the opt-in Plaintiffs be quashed and discovery limited. Again, the argument is without merit. In *Robert Swinney, et al v Amcomm Telecommunications, Inc.*, 12-cv-12925-NGE-MAR (Edmunds, N.)(See Exhibit "I"), the court held:

> "Although the phrase 'similarly situated' is undefined, 'the Sixth Circuit has recognized that district courts typically 'follow[ ] a two-stage certification process . . . to determine whether the opt-in plaintiffs and lead plaintiffs [are] similarly situated.' *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, *1 (E.D. Ky. Sept. 28, 2009) (quoting *O'Brien*, 575 F.3d at 583 and citing *Comer*, 454 F.3d at 546). *The first stage of § 216(b) certification, also known as the 'notice stage,' takes place early in the litigation; i.e., 'at the beginning of discovery.'* Comer*, 454 F.3d at 546. At this notice stage 'the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate.' *Noble*, 2009 WL 3154252 at *1. *The second stage occurs much later; 'after all of the opt-in forms have been received and discovery has been concluded.'* Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted)." See Exhibit "I," p. 7).

Thus, extensive discovery is contemplated *before* the right to a collective action is finally determined.

Under the FLSA, the right to a collective action hinges on the existence of an established group of similarly situated plaintiffs and a collective action may only be "maintained" if that group exists. 29 U.S.C § 216(b). It is impossible, however, to know whether such a group exists until a "rigorous analysis" is utilized to determine if the prerequisite in 29 U.S.C. § 216(b), namely, "commonality," has been satisfied. The American Law Institute in its *Principles of Law: Aggregate Litigation* concludes that commonality ensures the collective action "does not compromise the ability of any person opposing the aggregate group in the litigation to dispute

the allegations made by claimants or to raise pertinent substantive defenses. *Principles of Aggregate Law: Aggregate Litigation § 2.07 ("Principles of Aggregate Litigation").* Commonality helps ensure that the defendant's right to due process is not violated by a collective action procedure that prevents the defendant from litigating the individual disqualifying facts among plaintiffs. *Id.* at § 2.07, comment j. All-in-all, the second stage "rigorous analysis" required by the FLSA requires that full and fair discovery be afforded to both parties. Without it, fairness and due process are lost.

Here, as explained above, the lead Plaintiffs are unilaterally attempting to control discovery by not answering basic and relevant discovery requests and by limiting discovery with respect to opt-ins to a "sample group." Defense counsel is not aware of any authority for such a proposition (and counsel for the lead Plaintiffs have provided none to date). It is also contrary to the Court's scheduling order, which places no limitation on discovery and actually closes discovery on July 19, 2013. One thing is certain, however. This "one-sided" procedure advocated by the Plaintiffs deprives defense counsel from properly investigating whether the claims of the lead Plaintiffs are similarly situated to those of the opt-ins, which is fundamental to re-examination of class certification under the rigor of the second stage analysis. It also prohibits defense counsel from properly investigating the factual basis for the claims of the lead Plaintiffs and opt-ins in general, including their damage claims, and from properly preparing for any required pre-trial motions, alternative dispute procedures or trial.

This litigation requires a more intensive, individualistic fact investigation than the Plaintiffs would like the Court to believe. In order to obtain class certification and prove their case in general, the lead Plaintiffs must demonstrate that their claims are similarly situated to those of potential opt-ins. This requires a detailed analysis under the "economic realities test."

Under the economic-realities test, employee status turns on whether the individual is, as a matter of economic reality, in business for himself/herself. In *Donovan v Brandle*, the United States Court of Appeals for the 6th Circuit recognized that the definition of employment under the FLSA is "determined" by evaluating whether the employee, "[a]s a matter of economic reality [is] dependent upon the business to which the employee render[s] service." 736 F2d 1114, 1116 (6th Cir. 1984), citing *Dunlop v Carriage Carpet, Co.*, 548 F2d 139, 145 (6th Cir. 1984). Six factors are used to determine whether an employee's "economic reality" is "dependent" on the employer's business. No single factor is more important than the other, as courts considered the entire circumstances of the working relationship. The six factors include: (1) the permanency of the relationship between the parties; (2) the degree of skill required for rendering the services; (3) the worker's investment in equipment or other materials for the task; (4) the worker's opportunity for profit or loss, depending on his or her skills; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Imars v Contractors MFG Servs, Inc.*, 165 F3d 27 (6th Cir. 1998)(table), available at 1998 WL 598778, *3. Here, the discovery requests issued to the lead Plaintiffs and opt-ins request pertinent information regarding the circumstances under which the Plaintiff cable installers were engaged by the Defendant. By way of example, the discovery requests seek information regarding control over the manner of work performed, the opportunity for profit and loss, investment in equipment and materials and skill and permanency of the work relationship, all of which are relevant to a proper factual analysis under the economic-realities test.

Additionally, "[a]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *Myers v Copper*

*Cellar Corp*, 192 F3d 546, 551 (6th Cir. 1999).  This also requires an intensive fact-specific analysis.  Indeed, in this case, just with respect to the issue of work performed, the limited discovery to date reveals that the cable installers were paid on a "flat fee per task basis" and that there are no time cards or hourly time records.  Thus, discovery must be conducted to identify each week that each Plaintiff claims to have worked in excess of 40 hours per week.  Then, the jobs that each Plaintiff performed each week must be identified.  Since the jobs were paid on a "flat fee per task basis," hours worked and an hourly rate must be equated to each task performed.  This will prove to be quite a fact-specific task since the abilities and skill of each Plaintiff and specific requirements of each job will impact the hours each Plaintiff worked on any specific task or job.  The facts associated with the claims of each Plaintiff are so different and specific with respect to each Plaintiff, that eventual class certification appears inappropriate.

Without full and fair discovery, the Defendant is prohibited any ability to properly defend class certification and the Plaintiffs' claims asserted in this litigation.  This is exactly what the Plaintiffs want and it is patently unfair.  Since the lead Plaintiffs and opt-ins have failed and/or refused to provide relevant discovery, the Defendant requests that the Court grant its counter-motion and enter an order: (a) compelling the lead Plaintiffs and opt-ins (if they are allowed to participate in this litigation) to fully respond to the discovery requests served upon them; and (b) extending discovery for the Defendant only, to provide the Defendant an opportunity to conduct any necessary follow-up discovery, including the depositions.  In addition, if the Court allows opt-ins to participate in this litigation and determines that the Defendant is only entitled to "limited" discovery from the opt-ins, the Defendant requests that the Court grant its counter-motion and enter an order quashing the recent discovery request served by the opt-ins and

limiting the Defendant's response to those opt-ins who actually provide discovery in this litigation.

### III.   Conclusion and Relief Sought.

For the reasons set forth above, the Defendant Request that the Court deny the Plaintiffs' Motion for Supplemental Class Notice and for Sanctions and grant the Defendant's Counter-Motion: (1) To Prohibit Opt-Ins from Joining Case; (2) For Removal of Internet or Other Postings by Counsel for Plaintiffs During Notice Period and Accounting Regarding Solicitation of Opt-Ins; (3) To Compel Responses to Discovery by Lead Plaintiffs and Opt-Ins (If Permitted to Participate in the Litigation) and Extend Discovery Deadline for Defendant Only; and (4) To Quash and Limit Discovery Request by Opt-Ins (If Court Allows Opt-In Participation and Limits Scope of Discovery).

Dated: June 27, 2013.                      LAMBERT LESER

                                           By:    /s/ John E. Gannon
                                           John E. Gannon (P41349)
                                           Attorneys for Defendant
                                           916 Washington Avenue, Ste. 309
                                           Bay City, Michigan 48708
                                           (989) 893-3518
                                           jgannon@lambertleser.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing documents have been properly forwarded to all counsel of record per the FEDERAL RULES OF CIVIL PROCEDURE, on this 27th day of June, 2013.

_____ / s / John E. Gannon _____